UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROLINE TEDESCHI,

    Plaintiff,

v.                                        Case No.: 8:16-cv-00260-EAK-MAP

CITY OF TAMPA, a municipality,
and NICHOLAS SCLAVAKIS, in his
individual capacity,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This cause came before the Court pursuant to a *Dispositive Motion to Dismiss* ("**Motion to Dismiss**") (Doc 14) filed by Defendants City of Tampa, a municipality, and Officer Nicholas Sclavakis, in his individual capacity (the "**Defendants**") and a *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss* (the "**Memo**") (Doc. 16) filed by Plaintiff Caroline Tedeschi (the "**Plaintiff**"). For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED**.

I.    Introduction

The issues raised by the Motion to Dismiss and the Memo are first whether the existence of probable cause precludes the Plaintiff's alleged unlawful arrest and excessive force and alleged false arrest/false imprisonment claims. Next, whether the

1

force used was *de minimis* and did not violate Florida law or Federal law, and lastly, whether the Defendant Officer Sclavakis is entitled to qualified immunity. Jurisdiction is not contested and is proper under Federal Question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). Jurisdiction is also proper under supplemental jurisdiction for Plaintiff's State Law claims pursuant to 28 U.S.C. § 1367(a). The following facts are taken as true for the purpose of this motion only.

## II. Background

On or about 12:15 a.m. on January 25, 2015, Plaintiff and her friend left a private residence to walk to another apartment complex on West Nassau Street in Tampa. As Plaintiff and her friend left the residence, Plaintiff observed an unmarked four-door Ford driving slowly across the residence's parking area. The car then followed them out of the complex. After leaving the residence, Plaintiff and her friend initially turned in the wrong direction, then turned around after entering the correct address into a cell phone GPS. Plaintiff and her friend turned left onto North Rome Avenue, and the car continued to follow them. Plaintiff and her friend, believing that the car was following them, became frightened, and hid in the bushes in front of a residence on North Rome Avenue. The unmarked vehicle stopped on the opposite side of the road in front of them. Unbeknownst to the Plaintiff and her friend, the man following them was the Defendant, a Tampa Police Officer, dressed in a polo shirt and khaki pants.

Defendant stepped out of the vehicle, shined a flashlight directly at the Plaintiff and her friend through the bushes, and told them to "come closer." The two women were not able to see any markings or identification on Defendant's body or vehicle. Plaintiff and her friend began to slowly approach the Defendant and he again told them

to "come closer." When Plaintiff was close enough to Defendant to see him and his clothing, she yelled to her friend to run. Plaintiff and her friend ran and screamed for help. Defendant chased both women until he caught Plaintiff. When Defendant grabbed Plaintiff from behind, Plaintiff threw both her and her friend's cellphone to her friend and yelled for her friend to call 911.

Defendant immediately put Plaintiff's left wrist into handcuffs, but she resisted giving him her right arm. Plaintiff alleges she refused to do so because Defendant did not indicate to Plaintiff that she was being placed under arrest nor did Defendant produce identification. Thus, she was unable to identify Defendant as a police officer. Defendant wrapped his arms around her neck in an attempt to restrain her and pulled her hair when she resisted. Plaintiff indicated several times to Defendant that she would give him her right arm if he would provide identification. Defendant had only verbally identified himself as a police officer, and Plaintiff alleges that at no time did Defendant physically show Plaintiff or her friend his badge or any other form of tangible identification.

Plaintiff was able to grab onto a nearby mailbox with her right arm as she was held by Defendant and again requested that Defendant provide identification. Defendant then tightened the handcuff around her left wrist, tore her from the mailbox, and slammed her to the ground. Plaintiff was continuously requesting that Defendant show her a form of identification and Defendant continued to press her head to the ground. Defendant then pulled her off the ground and wrapped his arms around her body in attempt to restrain her. Shortly after, two marked Tampa Police vehicles arrived, and Plaintiff immediately stopped struggling. Defendant then finally placed

Plaintiff's right hand into handcuffs, and Plaintiff was escorted into one of the Tampa Police vehicles. Defendant came over to Plaintiff, read her *Miranda* Rights, and indicated to her that she was being placed under arrest. Defendant filled out a Criminal Report Affidavit charging Plaintiff with resisting arrest without violence pursuant to Fla. Stat. § 843.02 (2016). After approximately thirty minutes, the officers that had arrived on scene released Plaintiff out of the handcuffs and provided her with the Criminal Report Affidavit. Shortly after, Plaintiff retained an attorney to represent her in connection with the criminal charges against her. On April 9, 2015, the State voluntarily dismissed the criminal charges against Plaintiff.

On March 16, 2016, Plaintiff filed the instant action against Defendant for an alleged violation of Plaintiff's civil rights based on the unlawful arrest and use of excessive force by Defendants. Plaintiff alleges a violation of her civil rights pursuant to 42 U.S.C. § 1983 and 1988 and the Fourth Amendment of the United States Constitution. Plaintiff further claims that either the City of Tampa or, alternatively, Officer Sclavakis is liable under the state common law torts of battery and false arrest. Plaintiff also alleges Defendant Officer Sclavakis committed the state common law tort of malicious prosecution.

### III. Legal Standard

#### a. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must accept all of the alleged facts as true and resolve them in a light most favorable to the non-moving party. Fed. R. Civ. P. 12. *Timpson v. Sampson*, 518 F. 3d 870, 872 (11th Cir. 2008). To survive a motion to dismiss, a plaintiff's complaint requires more than bare legal

4

conclusions. Legal conclusions, as opposed to well-pled factual allegations, "are not entitled to the assumption of the truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly's* plausibility standard requires that the allegations be more than merely conceivable. *Id.* A plaintiff's complaint should be dismissed if the plaintiff has not "nudged their claims across the line from conceivable to plausible." *Id.* at 555.

### b. Qualified Immunity

Qualified immunity applies to government officials performing discretionary functions. To receive qualified immunity, the public official's conduct must not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 73 L. Ed. 2d 396 (1982). In analyzing a qualified immunity defense, we are to consider only the "clearly established law and the information possessed by the official at the time the conduct occurred." *Swint v. City of Wadley*, 51 F.3d 988, 995 (11th Cir. 1995). Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply. *Strock v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). To determine if the plaintiff has met her burden, this Court must apply the Supreme Court's two-part test for evaluating a claim of qualified immunity.

First, "taken in the light most favorable to the party asserting the injury do the facts alleged show the officer's conduct violated a constitutional right?" Second, if a constitutional right would have been violated under the plaintiff's version of the facts, the

court must then determine "whether the right was clearly established." *Saucier v. Katz*, 553 U.S. 194, (2001). In *Pearson v. Callahan*, 555 U.S. 223, 129 (2009), the Supreme Court ruled that it is not mandatory for lower courts to address the following questions in order. If the facts establish a constitutional violation, this Court must determine whether, at the time of the violation, the right was clearly established—that is, whether it would have been clear to a reasonable officer that the Defendant officer's conduct was unlawful. *Id.* at 202.

## IV.   Legal Analysis

The issues raised in this case are (1) Whether the Defendant had probable or arguable probable cause to arrest the Plaintiff, (2) Whether the Defendant used excessive force and violated the Plaintiff's Fourth Amendment rights, and (3) Whether sovereign immunity applies to the Defendant if he acted with malicious purpose.

### a. Probable Cause

The Fourth Amendment to the United States Constitution protects the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. An arrest without probable cause violates the Fourth Amendment. *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003).

Under Federal law, probable cause to arrest exists "when an arrest is objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 f.3d 1188, 1194 (11th Cir. 2002). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information,

would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.*

Officers who make an arrest without probable cause can still be entitled to qualified immunity if there was arguable probable cause for the arrest. *Lindsey v. Storey*, 936 F.2d 554, 562 (11th Cir. 1991). "Arguable probable cause exists when "an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

Taking the Plaintiff's allegations as true, the Plaintiff alleges she and her friend were hiding in the bushes in fear of a stranger that was following them late at night. (Doc. 12). The Plaintiff and her friend were not aware that the Defendant was a police officer, as he was dressed in plain clothing and never produced his badge to confirm his identity as law enforcement. A reasonable officer in Defendant's circumstances would have realized that the Plaintiff and her friend were not aware of the Defendant's status as a police officer, because he was not in uniform and was driving an unmarked vehicle. A reasonable officer in the same circumstance and possessing the same knowledge as the defendant would not have believed that probable cause existed to arrest the Plaintiff because the Defendant was not engaged in the lawful execution of a legal duty.

The Florida Statute for Loitering or Prowling states that in detaining someone for a violation of the statute, a law enforcement officer may consider the fact that a person takes flight upon appearance of a law enforcement officer. Fla. Stat. § 843.02 (2016). However, based on the allegations in the complaint, the Plaintiff and her friend did not take flight upon the appearance of a law enforcement officer. They took flight upon the

appearance of a man in plain clothing that appeared threatening and had been previously following them. Thus, at this stage of the pleadings, Defendant was not engaged in the lawful execution of a legal duty and is not entitled to qualified immunity because the totality of the circumstances known to Defendant at the time did not rise to arguable or probable cause. Therefore, this Court must deny this Motion at this point of the pleading stage, but these issues of fact may be further developed and briefed at the summary judgment stage.

### b. Excessive Force

Next, Defendant argues that the force used by Defendant did not violate the Fourth Amendment or Florida law. (Doc. 14). A court must focus on whether the officers' actions are objectively reasonable in light of the facts and circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The application of the Fourth Amendment's test of reasonableness requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue. *Id.* For example, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. "Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake." *United States v. Place*, 462 U.S. 696, 703 (1983).

This Court must take the Plaintiff's allegations in the complaint as true. The Plaintiff alleges that the Defendant's force violated her Fourth Amendment right by

unreasonably using force to detain her. (Doc. 12). It was not objectively reasonable to suspect that the Plaintiff posed an immediate threat to the safety of others. Plaintiff claims she was hiding in the bushes and ran away from Defendant out of fear, when a stranger seemed to be following her and her friend. (Doc. 12). In addition, the Plaintiff was not actively resisting arrest by a police officer because she was not made aware—by tangible evidence--that he indeed was a bona fide law enforcement officer. Thus, this Court must deny the Motion to Dismiss.

### c. Sovereign Immunity

Lastly, the Defendant argues that he is entitled to the qualified immunity afforded by the Florida Statute § 768.28(9) for Counts II, IV, and VI. (Doc.14). The Statute grants sovereign immunity in tort actions for public officials and officers who are named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. *Id.* Sovereign immunity does not apply if an officer acted "in bad faith or with malicious purpose of in a manner exhibiting wanton or willful disregard of human rights, safety, or property." *Id.*

Plaintiff's complaint states that Defendant's alleged violation of Plaintiff's Fourth Amendment Right, was done "in bad faith, and/or with malicious purpose, and/or in a manner exhibiting wanton and willful disregard of human rights, safety, or property . . . ." (Doc. 12). Plaintiff alleges that Defendant pulled her hair when she continued to resist Defendant, and he persisted to restrain her after Plaintiff said she would cease resisting if he would provide identification. After again requesting that Defendant provide identification, Defendant tore her arm from the mailbox, and slammed Plaintiff's body to

the ground. Defendant committed these actions while Plaintiff was requesting police identification, but Plaintiff continued to receive none. This Court must take all of Plaintiff's allegations as true. Thus, because Plaintiff has plead that the Defendant acted in such a way that bars sovereign immunity, this Court must deny the motion to dismiss and the parties hereto can further argue these factual issues at a later point in the pleading stages.

### V.  Conclusion

Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss (Doc. 14) is **DENIED**. The Defendants have **ten days** from this date to answer the complaint.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this __11th__ day of July, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to: All Parties and Counsel of Record.